**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| WBCMT 2003-C9 ISLAND LIVING, LLC, a Michigan limited liability company, | ) ) ) ) |
| Plaintiff, | ) ) No. 2:14-cv-14243 |
| v. | ) ) Hon. Lawrence P. Zatkoff |
| SWAN CREEK LIMITED PARTNERSHIP, a Michigan limited partnership, | ) ) ) |
| Defendant. | ) ) ) ) |

**\*EXPEDITED CONSIDERATION REQUESTED\***

**PLAINTIFF'S MOTION FOR APPOINTMENT OF A RECEIVER,
AND FOR PRELIMINARY RELIEF**

Plaintiff WBCMT 2003-C9 Island Living, LLC ("Plaintiff"), by its counsel, Foley & Lardner LLP, moves this Court on an emergency basis pursuant to Fed. R. Civ. P. 65 and 66, M.C.L. § 600.2926 and M.C.L. § 554.231, for immediate entry of an order requiring that a receiver be appointed to manage and control property and proceeds for property owned and managed by Swan Creek Limited Partnership ("Borrower"). Furthermore, a preliminary injunction should be issued to protect Plaintiff's interest in the property and income therefrom.

Plaintiff has not provided Borrower with notice of this Motion, because it believes that advance notice may prejudice its interests. Fed. R. Civ. P. 65(b) authorizes this Court to enter a temporary restraining order, granting the relief requested herein. Accordingly, Plaintiff requests that this Court enter a *temporary restraining order ("Order")* attached to the Brief as <u>Exhibit 4</u>, which provides for: (i) the appointment of M. Shapiro Management Company, LLC, through its authorized agent Mark Kassab as receiver, with all of the powers and duties prescribed by law and the Order; (ii) protecting Plaintiff's interest in the Property and income therefrom from dissipation by Defendants; and (iii) scheduling a hearing on Plaintiff's Motion for Preliminary Injunction for _____, 2014 at _____ a.m./p.m.

In support of its Motion, Plaintiff relies upon its Verified Complaint filed concurrently herewith and Brief in Support.

4829-4386-0508.1

Respectfully submitted,

**FOLEY & LARDNER LLP**

/s/ Ann Marie Uetz
Ann Marie Uetz (P48922)
Tamar Dolcourt (P73425)
500 Woodward Ave., Suite 2600
Detroit, Michigan 48226
Telephone (313) 234-7140
Facsimile (313) 234-2800\
auetz@foley.com
tdolcourt@foley.com

*Attorneys for Plaintiff*

Dated:  November 4, 2014

3

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WBCMT 2003-C9 ISLAND LIVING,
LLC, a Michigan limited liability
company,

   Plaintiff,

  v.

SWAN CREEK LIMITED PARTNERSHIP, a
Michigan limited partnership,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:14-cv-14243

Hon. Lawrence P. Zatkoff

## BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
## APPOINTMENT OF RECEIVER AND FOR PRELIMINARY RELIEF

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED................................................................. ii

MOST CONTROLLING AUTHORITY ................................................................. iii

I.    INTRODUCTION ..........................................................................................1

II.   STATEMENT OF FACTS ..............................................................................2
      A.    Background ...........................................................................................3
      B.    The Mortgage .......................................................................................3

III.  The Borrower's Default Of The Loan Documents....................................10
      A.    Plaintiff's Damages ............................................................................12

IV.   STANDARD FOR THE APPOINTMENT OF A RECEIVER ...................13

V.    ARGUMENT.................................................................................................15
      A.    A Receiver Should Be Appointed Over The Property To
            Preserve Plaintiff's Collateral ...........................................................15
            i.    The Loan Documents Authorize The Appointment
                  Of A Receiver ............................................................................15
            ii.   The Appointment Of A Receiver Is Expressly
                  Authorized By Michigan Statute ...................................17
            iii.  The Appointment Of A Receiver Is Authorized By
                  The Court's Equitable Powers....................................19
            iv.   M. Shapiro Management Company, LLC Is Well
                  Qualified To Act As Receiver Through Its
                  Authorized Agent Mark Kassab ...................................22
      B.    An Injunction Is Necessary To Protect The Property ........................23
            i.    Plaintiff Is Likely To Succeed On The Merits ..............24
            ii.   Plaintiff Will Suffer Irreparable Harm Without An
                  Injunction.......................................................................24
            iii.  The Borrower Will Not Be Harmed By An
                  Injunction.......................................................................25
            iv.   Issuing An Injunction Serves The Public Interest..........25

VI.   CONCLUSION..............................................................................................26

## STATEMENT OF ISSUES PRESENTED

1.      Is Plaintiff entitled to the immediate appointment of a receiver and a temporary restraining order, and after notice and hearing, an injunction where Defendant agreed Plaintiff had a strict right to the appointment of a receiver in the event of default on a mortgage, Defendant has defaulted on and breached the mortgage, and the relief sought is authorized by the parties' express agreement and under the law?

Plaintiff says "Yes."

## <u>MOST CONTROLLING AUTHORITY</u>

M.C.L. § 554.231

M.C.L. § 600.2926

Fed. R. Civ. P. 66

Fed. R. Civ. P. 65

## I.     INTRODUCTION

Plaintiff, WBCMT 2003-C9 Island Living, LLC, a Michigan limited liability company ("Plaintiff"), by its counsel, Foley & Lardner LLP, moves this Court on an emergency basis pursuant to Fed. R. Civ. P. 65 and 66, M.C.L. § 600.2926 ("Receiver Statute"), and M.C.L. § 554.231 ("Assignment of Rents Statute") for immediate entry of a temporary restraining order appointing a receiver to enforce the covenants under the Mortgage (as defined below) and to manage and control a mobile home community located at 23379 Island Drive, New Boston, Michigan, on which Plaintiff holds a mortgage, as well as, a security interest on the Personal Property (as defined below) located thereon (collectively, the "Property"). Plaintiff seeks entry of a preliminary injunction for the same relief after notice and a hearing.

Plaintiff is the mortgagee for the Property.  The mortgagor for the Property is the borrower, Swan Creek Limited Partnership, a Michigan limited partnership ("Borrower").  The Borrower currently controls and manages the Property and has agreed in advance that the Plaintiff has a strict right to the appointment of a receiver under the circumstances present here.  In this case, Plaintiff seeks to enforce the contracting parties' agreement to the appointment of a receiver; it also seeks to enforce its right to the appointment of a receiver under statutory and common law.

Here, the loan documents provide Plaintiff with a broad right to the assignment of rents and profits from the Property upon default.  It is indisputable that the Borrower is in default and the mortgage remains unpaid.  The Maturity Date of the Loan—December 1, 2013—has passed and Borrower is in default on the Loan in the amount of more than $3,970,657.76.  If a receiver is not appointed to manage the Property, the Borrower will dissipate these funds.  If this happens, then Plaintiff will forever lose its ability to exercise its rights to those revenues from the Property.  The revenues are in imminent danger of being dissipated if they are not immediately paid to a receiver and emergency relief establishing the appointment of a receiver is necessary and appropriate in this matter.

In addition, appointment of a receiver is necessary to protect the subject property from waste and dissipation.  Plaintiff has the right to a receiver in connection with the Borrowers' breaches of contract, including breaches of the covenants in the mortgage, in order to preserve and protect the Property.  The relief requested is authorized under federal and Michigan law.

## II.    STATEMENT OF FACTS

These facts are verified in the Verified Complaint for Enforcement of Mortgage, Including Assignment of Rents, Appointment of Receiver and Other Relief ("Verified Complaint") filed concurrently herewith.  Exhibit references, unless otherwise noted, are to the exhibits attached to the verified complaint.

## A.     Background

On or about November 6, 2003, LaSalle Bank, N.A., a national banking association ("Original Lender") made a loan (the "Loan") to Borrower in the amount of $4,350,000.00.  The Loan is evidenced by a promissory note, secured by a mortgage.  Borrower has defaulted on the Loan, as more fully discussed below.

Importantly and especially relevant to the relief requested here, the Borrower expressly consented in the mortgage to the *ex parte* appointment of a receiver by the court in the event of default.  The mortgage states in relevant part as follows:

> If an Event of Default occurs and is continuing or if Lender has accelerated the indebtedness, Lender, upon application to a court of competent jurisdiction, shall be entitled **as a matter of strict right, without notice,** and without regard to the occupancy and value of any security for the Indebtedness, without any showing of fraud or mismanagement on the part of Borrower or any insolvency of any party bound for its payment, to the appointment of a receiver…to take possession of and to operate the Property, and to collect and apply the rents, issues, profits, and revenues thereof.

> Ex. D, §24 (emphasis added).

## B.     The Mortgage

The Borrower's indebtedness under the Loan is evidenced by a Promissory Note dated November 6, 2003 (the "Note").  Exhibit C.  To secure repayment of the indebtedness evidenced by the Note and performance of all covenants and conditions contained therein, the Borrower also executed a Mortgage dated November 6, 2003 (the "Mortgage") that secured repayment of the Note and

encumbers the Property, which was duly recorded in the Office of the Register of Deeds for the County of Wayne, Michigan on November 12, 2003, as Instrument Number 203699479, in Liber 39510, Page 1148, and re-recorded February 22, 2004 as Instrument Number 204140869, in Liber 40162, Page 83.  Exhibit D.

Borrower also assigned to Original Lender all of Borrower's right, title, and interest in and to all rents, issues, and profits that may arise or be had from the Property, and other property rights, interests, and estates as more particularly set out in the Mortgage.  The Mortgage further states:

> Lender shall be entitled to all the rights and remedies conferred by (MCLA 554.231, *et seq*., (MCLA 554.211 *et seq*.) to the extent applicable, and (MCLA 554.81 *et seq*.),  Upon the occurrence of an Event of Default and without any action by Lender, Borrower shall have no further right to collect or otherwise receive such Rents, which will be the absolute and sole property of Lender pursuant to those statutes.

Ex. D, § 52(b).

Borrower also executed an Assignment of Leases and Rents, dated November 6, 2003, which was duly recorded in the Office of the Register of Deeds for the County of Wayne, Michigan, on November 12, 2003 as Instrument Number 203699494 at Liber 39510, Page 1193 and re-recorded on February 11, 2004 as Instrument Number 204140929 in Liber 40162, Page 128 (the "Assignment of Rents").  Exhibit E.  Pursuant to the Assignment of Rents, Borrower assigned to Original Lender all of Borrower's right, title, and interest in and to all present and

future Leases and Rents, as those terms are defined under the Loan Agreement.

This provision states in relevant part as follows:

> The parties intend that this Assignment **grants a present, absolute, and unconditional assignment** of the Leases, Rents, Lease Guaranties, and Bankruptcy Claims, Proceeds, and Other Rights, and shall immediately upon execution, give Lender the right to collect the Rents and other sums due under the Lease Guaranties and to apply them in payment of the Debt.

Ex. E, § 2.1 (emphasis added).

The Assignment of Rents also provides for the *ex parte* appointment of a receiver upon an event of default occurring:

> Upon or at any time after the occurrence of default under this Assignment or an Event of Default (as defined in the Security Instrument) (each a "Default"), the license granted to Borrower in Section 2.1 of this Assignment shall be automatically revoked, and Lender shall immediately be entitled to possession of all Rents and sums due under the Lease Guaranties, whether or not Lender takes control of the Property.  In addition, Lender may, at its option, without waving such Default, without notice, and without regard to the adequacy of security for the Debt, either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, or **by a receiver appointed by a court (which such appointment of receiver shall, upon application to a court of competent jurisdiction, be a matter of strict right without notice)**, dispossess Borrower and its agents, and servants from the Property….

Ex. E, § 3.1 (emphasis added).

The Mortgage also grants a security interest in all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures, inventory, materials, supplies and other articles of personal property owned by Borrower or in which Borrower has an interest, located on the Premises and Improvements, as those terms are defined in the Mortgage, as well as all leases and rents (the "Personal Property").  (Ex. D at p. 2.)  Such security interest has been perfected by the Financing Statement between Borrower and Original Lender, as record in the Wayne County Register of Deeds on November 13, 2003, at Liber 39583, page 366 (the "County Financing Statement").  Continuations of the County Financing Statement were filed with the Wayne County Register of Deeds on July 9, 2008 at Liber 42381, Page 1667, and on May 14, 2013 at Liber 50792, page 391.  Such security interest was also perfected by the Financing Statement between Borrower and Original Lender, as filed with the Michigan Secretary of State ("SOS") as Number 2003216023-6 on November 10, 2003 (the "State Financing Statement").  Continuations of the State Financing Statement were filed with the Michigan SOS on July 8, 2008 as Instrument Number 2008107754-3, and on May 10, 2013 as Instrument Number 2013067145-4.  Exhibit F.

Original Lender assigned its interest in the Loan and the Loan Documents to Wells Fargo Bank Minnesota, N.A., as Trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-

6

Through Certificates, Series 2003-C9 ("Assignee #1"). Original Lender endorsed the Note to Assignee #1.  The Mortgage was assigned pursuant to that certain Assignment of Mortgage, Security Agreement and Fixture Filing, executed and effective as of December 23, 2003, recorded December 23, 2004, as Instrument No. 205011923, in Liber 41896, Page 65, of the Records, as corrected pursuant to that certain Corrected Assignment of Mortgage, Security Agreement and Fixture Filing, recorded March 16, 2005, as Instrument No. 205135487, in Liber 42381, Page 1657, of the Records (the "Mortgage Assignment to Assignee #1").  Original Lender also assigned the Assignment of Rents to Assignee #1 pursuant to that certain Assignment of Assignment of Leases and Rents, executed and effective as of December 23, 2003, recorded December 23, 2004, as Instrument No. 205011913, in Liber 41896, Page 60, of the Records, as corrected pursuant to that certain Corrected Assignment of Assignment of Leases and Rents, recorded March 16, 2005, as Instrument No. 205135490, in Liber 42381, Page 1662, of the Records (the "Assignment of  Assignment of Rents and Leases to Assignee #1").  Original Lender further assigned its interest in the County Financing Statement to Assignee #1 pursuant to a UCC Financing Statement Assignment recorded on December 23, 2004 as Liber 41891, Page 936 of the Records and assigned its interest in the State Financing Statement pursuant to a UCC Financing Statement Assignment filed with the Michigan SOS on June 1, 2004 as Document Number 2004110780-5 (the

"Financing Statement Assignments to Assignee #1", and collectively with the Mortgage Assignment to Assignee #1 and Assignment of Assignment of Rents and Leases to Assignee #1, the "Assignments to Assignee #1")

The Mortgage was then further assigned by Wells Fargo Bank, N.A., successor-by-merger to Wells Fargo Bank Minnesota, N.A., as Trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2003-C9 ("Successor to Assignee #1"), to U.S. Bank National Association, N.A., as Trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2003-C9 ("Assignee #2"), pursuant to that certain Assignment of Mortgage and Assignment of Assignment of Leases and Rents, effective as of March 31, 2009, recorded July 17, 2009, as Instrument No. 209266837, in Liber 48028, Page 970, of the Records (the "Mortgage Assignment to Assignee #2").  Successor to Assignee #1 also endorsed the Note to Assignee #2. Successor to Assignee #1 also assigned the Assignment of Rents to Assignee #2 pursuant to that certain Assignment of Mortgage and Assignment of Assignment of Leases and Rents, effective as of March 31, 2009, recorded July 17, 2009, as Instrument No. 209266837, in Liber 48028, Page 970, of the Records (the "Assignment of Assignment of Rents and Leases to Assignee #2").  Successor to Assignee #1 further assigned its interest in the County Financing Statement to

Assignee #2 pursuant to a UCC Financing Statement Amendment recorded on October 26, 2009 as Liber 48183, Page 1220 of the Records and its interest in the State Financing Statement pursuant to a UCC Financing Statement Amendment filed with the Michigan SOS on October 26, 2009 as Document Number 2009152707-1 (the "Financing Statement Assignments to Assignee #2", and collectively with the Mortgage Assignment to Assignee #2 and Assignment of Assignment of Rents and Leases to Assignee #1, the "Assignments to Assignee #2").

Assignee #2 assigned its interest in the Loan and the Loan Documents to Plaintiff, by endorsing the Note to Plaintiff, and delivering to Plaintiff an Assignment of Mortgage, dated June 6, 2014 ("Mortgage Assignment to Plaintiff"); an Assignment of Assignment of Leases and Rents, dated June 6, 2014 ("Assignment of Rents Assignment to Plaintiff"), a UCC Financing Statement Amendment filed with the Secretary of State in Michigan on July 16, 2014 as Instrument Number 2014103808-7, and a UCC Financing Statement Amendment filed with the Wayne County Register of Deeds recorded on July 15, 2014 at Liber 51631, page 1227 (collectively the "UCC Assignments to Plaintiff"), and an Omnibus Assignment of Loan Documents ("Omnibus Assignment to Plaintiff" and, collectively, with the Mortgage Assignment to Plaintiff, the Assignment of Rents Assignment to Plaintiff, the Allonge to Plaintiff, the UCC Assignment to

Plaintiff, the "Assignments to Plaintiff"). The Mortgage Assignment to Plaintiff was duly recorded in the Office of the Register of Deeds for the County of Wayne, Michigan on June 19, 2014, as Instrument No. 2014286591, at Liber 51596, Page 71. The Assignment of Rents Assignment to Plaintiff was duly recorded in the Office of the Register of Deeds for the County of Wayne, Michigan on June 19, 2014, at Liber 51596, Page 82. Group Exhibit G.

Hereinafter, the Mortgage, Note, Assignment of Rents, Financing Statement, Assignments to Assignee #1, Assignments to Assignee #2, and Assignments to Plaintiff are referred to collectively, where appropriate, as the "Loan Documents."

## III.   The Borrower's Default Of The Loan Documents

Under the terms of the Note, Borrower agreed to pay the outstanding balance of the principal sum of this Note and all accrued and unpaid interest thereon on December 1, 2013 (the "Maturity Date"). Under the terms of the Loan Documents, an Event of Default occurs if Borrower fails to pay any portion of the Debt, as that term is defined in the Loan Agreement, on the date it is due. Here, Borrower has defaulted under the terms and conditions of the Loan Documents by failing to pay amounts owed under the Note; specifically, by failing to pay the Debt in full on Maturity Date. Assignee #2, through counsel, provided Borrower notice of this default via a Notice of Default letter dated January 16, 2014. Exhibit H.

The unpaid principal balance as of July 1, 2014, is $3,673,323.93 and interest has accrued on said unpaid principal in the amount of $250,883.95 through July 1, 2014. The total amount due as principal and interest, along with reserves, late fees, prepayment penalties and other charges, as of July 1, 2014, is $3,932,758.92, less certain sporadic partial payments made by Borrower since July 1. Interest continues to accrue on said balance at the rate of $289.77 per day. Default interest continues to accrue on said balance at the rate of $510.18 per day. In addition, Borrower is liable for attorneys' fees and costs in the amount of at least $75.00.

Pursuant to the Assignment of Rents, Borrower's license to collect rents has terminated.  The Assignment of Rents states in relevant part:

> Upon or at any time after the occurrence of default under this Assignment or an Event of Default (as defined in the Security Instrument) (each a "Default"), the license granted to Borrower in Section 2.1 of this Assignment shall be automatically revoked, and Lender shall immediately be entitled to possession of all Rents and sums due under the Lease Guaranties, whether or not Lender takes control of the Property.  In addition, Lender may, at its option, without waving such Default, without notice, and without regard to the adequacy of security for the Debt, either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, or **by a receiver appointed by a court (which such appointment of receiver shall, upon application to a court of competent jurisdiction, be a matter of strict right without notice)**, dispossess Borrower and its agents, and servants from the Property….

Ex. E, § 3.1 (emphasis added).

The Borrower expressly consented in the Mortgage and Assignment of Rents to the appointment of a receiver upon an Event of Default, which is defined in the Mortgage to include the failure to pay any amount as and when due under the Loan Documents. Ex. D, §§ 20(a); 24; Ex. E, § 3.1.  In particular, Section 24 of the Mortgage states, in relevant part, as follows:

> If an Event of Default occurs and is continuing or if Lender has accelerated the indebtedness, Lender, upon application to a court of competent jurisdiction, shall be entitled **as a matter of strict right, without notice,** and without regard to the occupancy and value of any security for the Indebtedness, without any showing of fraud or mismanagement on the part of Borrower or any insolvency of any party bound for its payment, to the appointment of a receiver…to take possession of and to operate the Property, and to collect and apply the rents, issues, profits, and revenues thereof.

Ex. D, § 24 (emphasis added).

The Borrower has failed to make payments as required by the Loan Documents and, therefore, is in default of the Note, the Mortgage, and the Assignment of Rents.  Therefore, a receiver should be appointed.

## A.    Plaintiff's Damages

Plaintiff has been damaged and is entitled to the appointment of a receiver in order to preserve and protect the Property.  Because the Borrower has failed and refused to fulfill its obligations under the Note, Mortgage, and Assignment of

Rents, Plaintiff is concerned that the Borrower will fail to maintain the Property securing its obligations to Plaintiff.  Furthermore, the Property is a mobile home community.  Plaintiff is concerned that Borrower has not and will not maintain the Property in a state which is appropriate for the residents.

This demonstrates that Plaintiff's interest in the collateral continues to be diminished and requires the immediate appointment of a receiver to protect Plaintiff's mortgagee interests.  Plaintiff will suffer immediate and irreparable loss unless a receiver is appointed because it cannot otherwise preserve and protect its collateral and efficiently enforce the Mortgage.

## IV.    STANDARD FOR THE APPOINTMENT OF A RECEIVER

This Court is authorized to appoint a receiver as requested by Plaintiff under the parties' Loan Documents, as well as Fed. R. Civ. P. 66, M.C.L. § 600.2926, and M.C.L. § 554.231.

Fed. R. Civ. P. 66 provides, in relevant part, that: "[t]hese rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued."

M.C.L. § 600.2926 provides, in relevant part, that, "[j]udges in the exercise of their equitable powers, may appoint receivers in all pending cases where appointment is allowed by law."  *See* M.C.L. § 600.2926.  Michigan courts have interpreted this statute to mean that appointment of a receiver is not limited to

cases where appointment is expressly provided by statute (although express statutory support for a receiver does exist in this case, as described immediately below), but also includes those cases where the facts and circumstances make appointment of a receiver an appropriate exercise of the court's equitable jurisdiction. *Band v. Livonia Assocs.*, 176 Mich. App. 95, 104; 439 N.W.2d 285 (Mich. App. 1989); *see also*, *McDonald v. McDonald*, 351 Mich. 568, 575; 88 N.W.2d 398 (Mich. 1958) (a court of equity has an inherent right to appoint a receiver in a proper case to implement and enforce its decrees and orders).  Such appointment may be made on an *ex parte* basis.  *Livingston v. Southern Sur Co. of N.Y.*, 262 Mich. 438; 247 N.W. 712, 713 (Mich. 1933).  Under Michigan law, a receiver may be appointed where necessary to receive and preserve the property of parties to litigation and, in some cases to control and manage it for the persons or parties who may ultimately be entitled thereto.  *Westgate v. Westgate*, 294 Mich. 88, 91; 292 N.W. 569 (Mich. 1940).

Michigan's Assignment of Rents Statute (M.C.L. § 554.231) authorizes the appointment of a receiver as additional security for the repayment of a mortgage debt in such cases where there exists an assignments of rents and profits in mortgaged properties.  The Assignment of Rents Statute provides, in relevant part that, in connection with any mortgage on commercial or industrial property "it shall be lawful to assign the rents . . . as security in addition to the property . . . .

Such assignment of rents shall be binding upon such assignor only on the event of default in the terms and conditions of said mortgage . . . ." *See* M.C.L. § 554.231. The Michigan Supreme Court, in *Smith v. Mutual Benefit Life Ins. Co.*, 362 Mich. 114, 125; 106 N.W.2d 515, 520 (Mich. 1960), expressly confirmed that the Assignment of Rents Statute empowers courts to appoint receivers to collect rents from mortgaged properties and to apply those rents to the maintenance and operation of the property:

> [W]e think the trial court properly interpreted [the Assignment of Rents Statute] in holding that he had authority under it to appoint a receiver to collect the rents and apply them to the accrued interest, maintenance costs, insurance, taxes, and the deficiency until the expiration of the redemption period.

*Id*. at 125.

Accordingly, there is sufficient authority for the relief Plaintiff seeks in the instant motion.

## V.    ARGUMENT

### A.    A Receiver Should Be Appointed Over The Property To Preserve Plaintiff's Collateral

#### i.    The Loan Documents Authorize The Appointment Of A Receiver

Upon an event of default (which includes the failure to pay any portion of Borrower's indebtedness to Plaintiff as and when due), the Note, Mortgage, and Assignment of Rents each provide Plaintiff with numerous non-exclusive remedies

to protect its interest in the Property.  Plaintiff may, among other things, apply for the appointment of a receiver (without notice and without regard to the Borrower's solvency), and/or enforce Plaintiff's interest in the leases and rents from the Property.

Under the Mortgage, Borrower expressly agreed that Plaintiff has a <u>strict right</u> to the appointment of a receiver upon an Event of Default.  Ex. D, §24.  As demonstrated above, Borrower is clearly in default of the Note and Mortgage by failing to pay the entire indebtedness on the Maturity Date.  Borrower is also in default of the Assignment of Rents because it has not turned over rents to the Plaintiff, as required.

When deciding a motion to appoint a receiver filed in another matter, the Eastern District of Michigan held that a borrower's agreement to the appointment of a receiver "is sufficient to conclude that a mortgage holder is entitled to such an appointment . . . ." *Federal Nat'l Mortgage Assoc. v. Maple Creek Gardens, LLC*, 2010 WL 374033, E.D. Mich., January 25, 2010 (No. 09-14703) (J. Duggan), at *3 (attached hereto as <u>Exhibit 1</u>).[1]  Courts have not hesitated to appoint receivers to protect a mortgagee's interest in real estate and the income therefrom where the parties have agreed to the appointment of a receiver should certain conditions arise.

---

[1] *See also*, Hon. Mark A. Goldsmith, *Receiverships in the Real Estate Setting*, 28 Mich. Bus. L.J. 36 at pg. 38 (Summer 2008) (stating under Michigan law where assignment of rents is invoked the appointment of a receiver is appropriate) (attached hereto as <u>Exhibit 2</u>)

*See Citibank, N.A. v. Nyland Ltd.*, 839 F.2d 93, 97-98 (2d Cir. 1988) ("It is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes such appointment, and the mortgagee has repeatedly defaulted on conditions of the mortgage which constitute one or more events of default."); *N.Y. Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991) ("The deed of trust specifically provides for the appointment of a temporary receiver in circumstances such as now exist.  There is little hardship in enforcing the terms of the parties' bargain.").  Here, Borrower agreed, in both the Mortgage and the Assignment of Rents that Plaintiff has a strict right to the appointment of a receiver upon an event of default.

Accordingly, based solely and expressly on the contractual provisions which authorize the appointment of a receiver under the assignment of rents in favor of Plaintiff, this Court should appoint a receiver without delay.

### ii.    The Appointment Of A Receiver Is Expressly Authorized By Michigan Statute

Michigan law expressly permits the appointment of a receiver.  Michigan courts have recognized the need for the appointment of receivers to protect property.  A judge "in the exercise of their equitable powers, may appoint receivers in all pending cases where appointment is allowed by law."  M.C.L. § 600.2926.  "The primary purpose of a receiver is to preserve property" and to "protect

property involved in controversy." *See Cohen v. Cohen*, 125 Mich. App. 206, 214; 335 N.W.2d 664 (Mich. App. 1983).

In addition, where (as here) a mortgage provides for an assignment of rents, Michigan law provides for appointment of a receiver to take possession of the property, and collect rents. Specifically, the Assignment of Rents Statute provides that:

> [I]n or in connection with any mortgage on commercial or industrial property other than an apartment building with less than 6 apartments or any family residence to secure notes, bonds or other fixed obligations, it shall be lawful to assign the rents, or any portion thereof, under any oral or written leases upon the mortgaged property to the mortgagee, as security in addition to the property described in such mortgage. Such assignment of rents shall be binding upon such assignor only in the event of default in the terms and conditions of said mortgage, and shall operate against and be binding upon the occupiers of the premises from the date of filing by the mortgagee in the office of the register of deeds for the county in which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of such notice upon the occupiers of the mortgaged premises.

M.C.L. § 554.231. This provision specifically permits courts to appoint receivers to collect rents from mortgaged properties. *Smith v. Mutual Benefit Life Ins. Co.*, 362 Mich. 114, 125; 106 N.W.2d 515 (Mich. 1960).

Accordingly, based on the Michigan statutes which authorize the appointment of a receiver under the assignment of rents in favor of Plaintiff, this

Court should appoint a receiver without delay.   Plaintiff is entitled to the appointment of a receiver to collect income derived from the Property, and use such to preserve and maintain its collateral.   Rents and profits are necessary to ensure that the Property is maintained and protected.   It would be inequitable to allow the Borrower to collect and divert the income from the Property in further breach of its obligations.

### iii.   The Appointment Of A Receiver Is Authorized By The Court's Equitable Powers

This case presents the strongest basis for the appointment of a receiver, both because the Borrower has agreed to the *ex parte* appointment of a receiver under these circumstances, and also because the parties agreed to the assignment of rents. However, even in cases not involving assignments of rents and profits, or where the parties have not contracted for the appointment of a receiver, this Court has the authority to appoint a receiver pursuant to Fed. R. Civ. P. 66.   In *Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F. Supp. 428 (E.D. Mich. 1995), a Michigan federal court adopted a six factor test for the appointment of a receiver:

> [F]actors typically influencing the district court's exercise of discretion include: (i) the existence of a valid claim by the moving party; (ii) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; (iii) imminent danger that property will be lost, concealed, or diminished in value; (iv) inadequacy of legal remedies; (v) lack of a less drastic equitable remedy; and (vi) the likelihood that appointment of a receiver will do more harm than good.

*Id*. at 432, *citing Aviation Supply Corp. v. RSBI Aerospace, Inc.*, 999 F. 2d 314, 316-17 (8th Cir. 1993).

Federal courts contemplating the appointment of a receiver have considered a number of factors, but have found the adequacy of the security and the financial position of the mortgagor to be most important. *See N.Y. Life*, 755 F. Supp. at 292. Thus, receivers are commonly appointed in situations involving a secured creditor with an interest in real property who is in the process of foreclosing on a mortgage and/or when the creditor needs assistance collecting rent from and otherwise protecting mortgaged properties from waste and neglect. *See Res. Tr. Corp. v. Bayside Developers*, 43 F.3d 1230, 1242 (9th Cir. 1995) (receiver properly appointed where secured creditor sought receiver to "conserve and manage" property); *Citibank*, 839 F.2d at 97-98; *Fed. Home Loan Mort. Corp. v. Tsinos*, 854 F. Supp. 113, 116 (E.D.N.Y. 1994); *Res. Tr. Corp. v. Fountain Circle Associates LTD Partnership*, 799 F. Supp. 48, 52 (N.D. Ohio 1992) (receiver appointed to collect rents pending foreclosure).

Many federal district courts have held that "[c]reditors in real propert[ies] have a well-established interest in the propert[ies] sufficient to support the appointment of a receiver." *Brill & Harrington Invs. v. Vernon Sav. & Loan Assocs.*, 787 F. Supp. 250, 253-54 (D.D.C. 1992). *See also N.Y. Life*, 755 F. Supp. at 292-93. Moreover, federal district courts have found that appointing a receiver

to manage commercial real estate during a foreclosure action is an appropriate –
not drastic – remedy.  *United States v. Berk & Berk*, 767 F. Supp. 593, 598 (D.N.J.
1991).

As set forth above, the Borrower has defaulted on its obligations under the
terms of the Loan in numerous ways, including by failing to pay the full principal
balance of the Loan and any outstanding interest due under the Note on the
Maturity Date.  Given this breach of the Loan Documents, the equities clearly
favor appointment of a receiver.  The appointment is an appropriate remedy for at
least six reasons.  ***First***, Plaintiff has a valid claim (the Mortgage provides for the
appointment of a receiver upon default) and very valuable interests in the Property
and the income generated by the Property.  Such interests require protection.
***Second***, the Borrower's defaults under the Loan Documents are substantial and
egregious, and evidence a deliberate attempt to deprive Plaintiff of the income
from the Property to which Plaintiff is entitled and which the Borrower is
contractually bound to turn over to Plaintiff.  ***Third***, the Borrower's defaults
demonstrate an inability or refusal to pay the debt evidenced by the Note and a
disregard for the other covenants of the Loan Documents.  Indeed, even though the
Loan Documents provide that upon an event of default the Borrower's license to
receive and apply income was automatically revoked, it is anticipated that without
the appointment of a receiver the Borrower will continue to retain certain income

from the Property without using the income to protect and safeguard Plaintiff's interests.    **Fourth**, the Property is a mobile home community.    Given the Borrower's defaults, Plaintiff is justifiably concerned that the Property is not being adequately managed and maintained by Borrower for the community.   Such failure diminishes the value of the Property and impacts the well-being of the residents. **Fifth**, the appointment of a receiver is the only appropriate equitable remedy. **Sixth**, there is no risk that the appointment of a receiver will do more harm than good.   Plaintiff holds a superior interest in the title to the Property and a receiver would not interfere in any way with any party's rights.   In this case there is no harm to the Borrower in the appointment of a receiver.   There is little hardship in enforcing the terms of the parties' bargain.   *Maple Creek Gardens, LLC*, supra at *3.

Consequently, it is necessary for this Court to appoint a receiver to avoid irreparable harm and waste to the Property and harm to Plaintiff's interest in the Property.

> iv.   **M. Shapiro Management Company, LLC Is Well Qualified To Act As Receiver Through Its Authorized Agent Mark Kassab**

M. Shapiro Management Company, LLC ("M. Shapiro"), through its authorized agent Mark Kassab, is qualified to act as a receiver in this case.   M. Shapiro has acted as a receiver for numerous distressed properties throughout the

nation, including many in Michigan.  Therefore, M. Shapiro, through its authorized agent Mark Kassab, is uniquely qualified to handle a case involving the issues presented here.  For the Court's convenience, information about M. Shapiro is attached hereto as Exhibit 3.

### B.    An Injunction Is Necessary To Protect The Property

The Sixth Circuit has identified four factors for courts to consider in deciding whether to issue a preliminary injunction:  (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm without the injunction; (3) the balance of the hardships to the defendant and the plaintiff; and (4) the impact of the injunction on the public interest.  *Golden v. Kelsey-Hayes Co.*, 73 F.3d 649 (6th Cir. 1996).  None of these four factors are "prerequisites that must be met," but are considerations for the trial court to balance.  *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).  Here, the factors weigh heavily in Plaintiff's favor and the Court should enter a preliminary injunction.

Plaintiff has not provided the Borrower with advance notice of this Motion because Plaintiff firmly and reasonably believes that such notice would result in the Borrower further breaching its obligations under the Loan Documents by hiding or dissipating said proceeds to the detriment of Plaintiff.  Fed. R. Civ. P. 65(b)(1) authorizes this Court to enter a temporary restraining order without notice, granting the relief requested herein.  Accordingly, Plaintiff requests that this Court

enter a temporary restraining order ("Order") in the form attached hereto and set a

hearing on Plaintiff's Motion for Preliminary Injunction to occur within the next

14 days.

### i.      Plaintiff Is Likely To Succeed On The Merits

The Borrower has demonstrated an unwillingness and/or inability to meet its

obligations under the Loan Documents.  As demonstrated above, and in Plaintiff's

Verified Complaint, the Borrower is clearly in default of the Loan Documents by

its failure to pay the indebtedness in full on the Maturity Date.  Furthermore, under

the Loan Documents, the Borrower agreed that its right to collect rents and income

generated by the Property ended upon an event of default and that such rents and

income would be turned over to Plaintiff.  The Borrower has failed to honor that

obligation.  Even more significantly, the Borrower has consented to the relief

requested, i.e. the appointment of a receiver.  Accordingly, Plaintiff is likely to

succeed on the merits of its claims in this case.

### ii.     Plaintiff Will Suffer Irreparable Harm Without An Injunction

Plaintiff will suffer immediate and irreparable injury to its interests in the

Property and the income generated therefrom without the entry of a preliminary

injunction.  Plaintiff is in jeopardy of losing its ability to ensure that it is repaid for

money loaned to the Borrower.  Given the Borrower's unwillingness and/or

inability to meet its obligations under the Loan Documents, Plaintiff will suffer irreparable injury absent injunctive relief.

Moreover, injunctive relief is necessary to prevent damage and waste to the Property. "[S]ince land is considered to be unique, its loss or threatened loss is considered to be irreparable injury." *Roghan v. Block*, 590 F. Supp. 150, 152 (W.D. Mich. 1984). An injunction is necessary to prevent the Borrower from diverting or spending revenue from the Property and dissipating the value of Plaintiff's collateral. Accordingly, because the Property is unique and the threatened harm to the Property is imminent, injunctive relief should be granted.

### iii.    The Borrower Will Not Be Harmed By An Injunction

Granting an injunction will not cause any harm to the Borrower. Due to its indisputable defaults, the Borrower no longer has the right to manage the Property, and the receiver will protect the interests of all parties with an interest in or who are affected by the Property. Moreover, the Borrower's license to receive and apply income from the Property automatically ended upon its default. Therefore, the Borrower will not be harmed by an injunction.

### iv.    Issuing An Injunction Serves The Public Interest

The public interest is served by compelling parties to honor their agreements and by avoiding harm or waste to commercial property. There is no public interest served in allowing the Borrower to default and further avoid its contractual

obligations.  Furthermore, the interests of the residents who live at the Property will be served by an injunction, as well as the appointment of a receiver experienced in the management of distressed properties.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff is entitled to appointment of a receiver. Plaintiff is specifically entitled to appointment of a receiver over the Property pursuant to the express terms of the Mortgage, M.C.L. § 600.2926, M.C.L. § 554.23 and Fed. R. Civ. P. 66.  The Borrower's undisputed defaults justify this Court's exercise of its equitable powers for the appointment of a receiver to take possession of the Property and prevent Plaintiff's collateral from being subjected to irreparable harm.

WHEREFORE, Plaintiff respectfully requests that this Court enter the Order attached hereto as Exhibit 4 which provides for:  (i) the appointment of M. Shapiro Management Company, LLC, through its authorized agent Mark Kassab, as receiver, with all of the powers and duties prescribed by law and the Order; (ii) protecting Plaintiff's interest in the Property and income therefrom from dissipation by Defendants; and (iii) scheduling a hearing on Plaintiff's Motion for Preliminary Injunction for _____, 2014 at _____ a.m./p.m.

Respectfully submitted,

FOLEY & LARDNER, LLP


/s/ Ann Marie Uetz
Ann Marie Uetz (P48922)
Tamar Dolcourt (P73425)
500 Woodward Ave., Suite 2600
Detroit, Michigan 48226
Telephone (313) 234-7140
Facsimile (313) 234-2800\
auetz@foley.com
tdolcourt@foley.com

Dated:  November 4, 2014                    *Attorneys for Plaintiff*