UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WBCMT 2003-C9 ISLAND LIVING, LLC,

    Plaintiff,                                           Case No. 14-cv-14243
                                                Hon. Matthew F. Leitman

v.

SWAN CREEK LIMITED PARTNERSHIP,

    Defendant.
_____/

## ORDER APPOINTING RECEIVER

On January 9, 2015, this Court granted the request by Plaintiff WBCMT 2003-C9 Island Living, LLC ("Lender" or "Plaintiff") for the appointment of a receiver to manage and control property currently owned by Defendant Swan Creek Limited Partnership ("Defendant") at 23379 Island Drive, New Boston, Michigan. (*See* the "Order Granting Appointment of Receiver," ECF #15.) The Court directed Plaintiff to propose one or more candidates to serve as receiver. (*See id.*)

Plaintiff has now proposed CFLane Receiver, LLC, through its authorized agent Victor Roth, to serve as receiver. (*See* ECF ##16-17.) Defendant has not objected to the proposed receiver candidate within the time allotted in the Order Granting Appointment of Receiver. Accordingly, the Court now appoints CFLane Receiver, LLC, through Mr. Roth, as receiver for the property.

Plaintiff has submitted a proposed order specifically defining the powers of the receiver. The Court has reviewed Plaintiff's proposed order and has made certain deletions and modifications to the proposal. *See Fed. Nat'l Mortgage Assoc. v. Newberry Apartments of Eaton Cty., Ltd.*, No. 11-cv-00968, slip op. at 3-4 (W.D. Mich. Oct. 20, 2011) (modifying and adopting plaintiff's proposed order appointing receiver).

Accordingly, **IT IS HEREBY ORDERED** that**:**

1. CFLane Receiver, LLC, through its authorized agent Victor Roth, (the "Receiver") is appointed as the Receiver over:

   a. The mobile home community located in Huron Township, Wayne County, Michigan ("Mortgaged Property"), on which Plaintiff holds a Mortgage and which is more fully described in the Mortgage, a copy of which is attached to Plaintiff's Complaint in this matter and incorporated by reference, together with all buildings, structures, and improvements on the Mortgaged Property;

   b. All fixtures of every kind or nature located in or upon or attached to, or used or intended to be used in connection with, the operation of the Mortgaged Property;

   c. All of the collateral and assets of Defendant, as described in the Mortgage attached to Plaintiff's Complaint including, but not limited to, all machinery, apparatus and equipment, materials, supplies, articles of personal property used in connection with or with the operation of the Mortgaged Property;

   d. All the cash, rent, royalties, issues, revenues, income, profits and other benefits of the Mortgaged Property and the facilities thereon as more particularly described in the

        Assignment of Leases and Rents filed with the Complaint, under present or future contracts, occupancy agreements, agreements for reimbursement, or otherwise, together with all accounts due or to become due as income in connection with the operations of the Mortgaged Property ("the Rents") all as more fully described in the Mortgage and Loan Documents attached to Plaintiff's Complaint, as defined therein;

    e.    All permits, licenses and other contracts pertaining to the Mortgaged Property and the operations of the Mortgaged Property;

    f.    All books, records, accounts or documents which in any way relate to the Mortgaged Property, the Rents, or the operations of the Mortgaged Property, and copies of all documents Defendant is legally obligated to retain;

    g.    All other property, estate, right, title and interest as described in the Mortgage and the other Loan Documents attached to and referred to in Plaintiff's Complaint; and

    h.    All bank accounts maintained by Defendant concerning the Mortgaged Property, including any operating accounts, escrow accounts, insurance-proceed accounts, cash management accounts, and/or security deposit accounts.

2.    The Receiver will manage the day-to-day operations of the Mortgaged Property.

3.    The Receiver shall have access to all of Defendant's records concerning the Mortgaged Property. Such records include, but are not limited to:

    a.    Leases including communication/correspondence files relating to the Mortgaged Property;

b. A current rent-roll for the Mortgaged Property, as well as tenant and family member contact names and telephone numbers;

c. A current aged accounts receivable/delinquency report for the Mortgaged Property;

d. The occupant ledgers for the Mortgaged Property;

e. Documents identifying and summarizing all pending litigation relating to the Mortgaged Property;

f. All operating licenses for the Mortgaged Property;

g. Documents pertaining to all pending new leases/renewals for the Mortgaged Property;

h. All existing service contracts for the Mortgaged Property;

i. All pending bids for contractor work for the Mortgaged Property;

j. Copies of all on-site employee payroll records and employee files and applications for the Mortgaged Property, to include number of employees on health or dental program by coverage (single, single plus, or family coverage), gender and age of each employee;

k. All documents, books, records and computer files and records concerning the rents, profits, finances, issues, and operation and management of the Mortgaged Property, including, but not limited to, accounts with any financial institutions;

l. Such other records pertaining to the management of the Mortgaged Property as may be reasonably requested by the Receiver;

m. All keys, access keys, cards, codes and passwords for the Mortgaged Property;

4

      n.      All security deposits, security deposit accounts and an accounting for all security deposits for the Mortgaged Property;

      o.      A list of all utilities and utility accounts for the Mortgaged Property;

      p.      All insurance policies for the Mortgaged Property;

      q.      Correspondence relating in any way to the Mortgaged Property;

      r.      Surveys, site plans, specifications, floor plans, drawings, measurements, etc. for the Mortgaged Property;

      s.      All information relating to tax appeals including files, attorney retainer agreements and pleadings for the Mortgaged Property; and

      t.      All records relating to security agreements in any homes on the Mortgaged Property.

4.    The release of employee payroll records and files, described in Paragraph 3(j) above, to the Receiver is authorized by this Order.

5.    Immediately upon entry of this Order, the Receiver has the authority to operate the Mortgaged Property.

6.    Receiver shall be entitled to possession of all monies that constitute revenue, profits, Rents and/or income collected from the operation of the Mortgaged Property, including any money held in accounts maintained by Defendant at any financial institution that has originated from the Mortgaged Property.

7. Immediately upon entry of this Order and continuing until expiration or termination of the receivership, the Receiver is authorized to take any and all reasonable and appropriate actions to take possession of, to exercise full control over, and to prevent waste and to preserve, manage, maintain, secure, and safeguard the Mortgaged Property, to the extent not otherwise prohibited by law or by enforceable contract.

8. The Receiver shall receive reasonable compensation for its services, payable from the funds collected from operation of the Mortgaged Property. The Receiver shall receive as reasonable compensation:

- A monthly management fee equal to 5% of the gross revenues of the Mortgaged Property collected each month, with a minimum fee of $4,000 per month;

- A set-up fee equal to one (1) month's management fee for the Mortgaged Property;

- A Construction Management Fee of 5% of all construction costs on projects in excess of $25,000.00.

- The Receiver shall not be entitled to compensation for: (a) travel expenses; (b) senior management presence on-site; (c) coordination of receivership services, such as filing receivership reports with the court or appearing in court in connection with the case;

- The Receiver shall not be entitled to a disposition fee to coordinate the sale of the Mortgaged Property if such a sale occurs.

9. The Receiver shall have the right to possess and control all of Defendant's right, title and interest in and to all proceeds from any claims made or to be made under any insurance policy maintained by Defendant with respect to the Mortgaged Property.

10. Should the Receiver not have sufficient funds to pay all of the Operating Expenses for the Mortgaged Property, Plaintiff may, in its sole discretion (without being under any obligation to do so except as to the Receiver's compensation and payment for professionals described in Paragraph 9), advance its own funds to pay such Operating Expenses as Plaintiff may elect to have paid. The repayment of all such funds advanced by Plaintiff shall be secured by the Mortgaged Property and under the Mortgage. If such funds are advanced by Plaintiff subsequent to Plaintiff's mortgage foreclosure sale, such amounts advanced may be added to Plaintiff's credit bid as and to the extent permitted by applicable law.

11. Should the Receiver have funds in excess of the anticipated Operating Expenses, including an appropriate reserve in an amount to be approved by Plaintiff, for the Mortgaged Property, the Receiver shall provide all such funds, on a monthly basis, to Plaintiff. All such funds shall be applied to the amount owed to

Plaintiff by the Defendant under the Mortgage for the Mortgaged Property. To the extent that there are any funds that exceed amounts due to Plaintiff under the Loan Documents, such funds shall be subject to further order of the Court.

12. Neither Plaintiff nor the Receiver shall be liable for any claim, obligation, liability, action, cause of action, cost or expense of Defendant or the Mortgaged Property arising out of or relating to events or circumstances occurring prior to this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of Defendant, and any liability to which Defendant is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Mortgaged Property and operation of Defendant's business (collectively all of the foregoing is referred to as "Pre-Receivership Liabilities"). Neither the Plaintiff nor the Receiver shall be obligated to advance any funds to pay any Pre-Receivership Liabilities. Notwithstanding the foregoing, with the prior written consent of Plaintiff (but not otherwise), Receiver may pay from funds collected from operation of the Mortgaged Property Pre-Receivership Liabilities in the ordinary course of business and that are not payable to Defendant or Defendant's insiders, affiliates, partners, related companies, parent companies, owners or those entities with common ownership and/or control.

13. The Receiver shall submit to this Court for its *in-camera* inspection and serve on the parties who have filed appearances a monthly accounting of all receipts and disbursements concerning the performance of its duties under this Order, and a final accounting within 90 days after termination of the receivership.

14. The Receiver may resign upon thirty days written notice or sooner upon a motion for cause. The Receiver may be removed from duties under this Order upon a motion for cause. If the Receiver is removed or resigns, the Receiver shall turn over to Plaintiff or its designee all of the Mortgaged Property unless otherwise ordered by the Court.

15. The Receiver shall submit a final accounting for approval by the Court within ninety days after the termination of the receivership or the Receiver's removal or resignation.

16. The Receiver shall have the power to enter into, modify, extend, terminate, and/or enforce leases and other contracts, and charge and collect rent for the mobile homes in connection with the Mortgaged Property in the ordinary course of business; provided, however, in so doing the Receiver shall not concede, settle, compromise or pay any Pre-Receivership Liabilities without written consent of Plaintiff.

17. The Receiver shall have the power to purchase and/or acquire title to any mobile home on the Mortgaged Property.

18.     The Receiver is authorized, in its discretion, to operate the Mortgaged Property under any and all existing agreements that are currently in place between the Defendant and any third party, as well as any of Defendant's plans and specifications, cost estimates, reports, permits, licenses, certificates of occupancy, development rights, warranties, guaranties, telephone exchanges, trademarks, the name of the Mortgaged Property, and any intangible rights relating to the Mortgaged Property.

19.     This Court shall retain jurisdiction over this action, the Mortgaged Property and the parties for the purpose of giving such other relief upon proper showing as is consistent with this Order and applicable law.  Unless otherwise ordered by this Court, the receivership shall terminate with respect to the Mortgaged Property upon the earliest of: (a) sale of the Mortgaged Property (other than by foreclosure or sheriff's sale); or (b) the expiration of the applicable redemption period following foreclosure of the Mortgaged Property.  The Receiver may, from time to time, upon notice to all parties who have appeared in this action, apply to this Court for further and other instructions and for further powers necessary to enable the Receiver to fulfill its duties under this Order.

20.     Plaintiff is required to file status reports with the Court on the last business day of every month until such time as the receivership terminates in accordance with the preceding paragraph.  Each status report shall include (1) a

description of what steps have been completed in the foreclosure process; (2) what steps are scheduled to be completed in the future; (3) what steps will need to take place but have not yet been scheduled; and (4) what activities the Receiver has undertaken during the reporting period to exercise its powers under this Order. The first such status report shall be filed on February 27, 2015.

21. The Court finds that Plaintiff in seeking to obtain a receiver is engaged in a workout activity, as that term is defined by M.C.L.A. § 324.20101a, and its actions in seeking appointment of a receiver are intended to protect the value and marketability of its collateral. Further, Plaintiff's actions in seeking the appointment of a receiver do not amount to participation in management as that term is defined in CERCLA, 42 U.S.C. § 9601(a)(20).

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: January 23, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 23, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

11